[Civ. No. 61664. Second Dist., Div. Three. Oct. 15, 1981.]

ALSAVON M., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Wilbur F. Littlefield, Public Defender, Kenneth I. Clayman, Timothy Murphy and Jack T. Weedin, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John H. Larson, County Counsel, and Richard E. Townsend, Deputy County Counsel, for Real Party in Interest.

OPINION

KLEIN, P. J.—This case presents the issue as to whether the intake procedure of the case staffing panel at Los Angeles County's first juvenile justice center serving the Watts/South Central area is in conflict with the statutory requirements of Welfare and Institutions Code sections 652, 653, and 654.[1]

---

[1]All references are to the Welfare and Institutions Code unless otherwise indicated.
Section 652 provides: "Whenever the probation officer has cause to believe that there was or is within the county, or residing therein, a person within the provisions of Section 601 or 602, the probation officer shall immediately make such investigation as he deems necessary to determine whether proceedings in the juvenile court should be commenced."
Section 653 provides in relevant part: "Whenever any person applies to the probation officer to commence proceedings... [t]he probation officer shall immediately make such investigation as he deems necessary to determine whether proceedings in the juvenile court should be commenced. If the probation officer determines that proceedings

For the reasons discussed we conclude that the juvenile's rights are adequately protected by the process utilized.

FACTS

On November 25, 1980, about 10:30 p.m. the minor involved herein, Alsavon M., and six cocompanions, were found within the cafeteria of the then closed Jordan High School. The door to the food freezer had been pried open. With one youth posted as a lookout, others were removing six cases of frozen burritos out the rear door. An automobile jack handle/lug wrench was found inside the cafeteria near the freezer. All seven suspects were taken into custody by police officers at the scene.

On January 13, 1981, a petition was filed alleging that Alsavon, age 14, came within section 602, in that he violated Penal Code section 459 (burglary), a felony. Alsavon appeared in the superior court before a commissioner for arraignment on the petition and the public defender was appointed.

Prior to entering a plea, Alsavon's attorney moved the court for reconsideration pursuant to section 654, which motion was denied. Alsavon's attorney filed an application for rehearing, and a judge rejected the application.

---

pursuant to Section 650 should be commenced to declare a person described in Section 602 to be a ward of the juvenile court, the probation officer shall cause the affidavit to be taken to the prosecuting attorney. The prosecuting attorney shall within his discretionary power institute proceedings in accordance with his role as public prosecutor pursuant to subdivision (b) of Section 650 of this code and Section 26500 of the Government Code...."

Section 654 states in relevant part: "In any case in which a probation officer, after investigation of an application for petition or other investigation he is authorized to make concludes that a minor is within the jurisdiction of the juvenile court or will probably soon be within such jurisdiction, he may, in lieu of filing a petition to declare a minor a dependent child of the court or a minor or a ward of the court under Section 601 or requesting that a petition be filed by the prosecuting attorney to declare a minor a ward of the court under Section 602 or subsequent to dismissal of a petition already filed, and with consent of the minor and the minor's parent or guardian, delineate specific programs of supervision for the minor, for not to exceed six months, and attempt thereby to adjust the situation which brings the minor within the jurisdiction of the court or creates the probability that he will soon be within such jurisdiction.... [W]hen in the judgment of the probation officer the interest of the minor and the community can be protected, the probation officer shall make a diligent effort to proceed under this section...."

Thereafter, a petition for writ of mandate and/or prohibition was filed, which petition was denied, but was revived due to a directive from the Supreme Court.

An alternative writ of mandate was ultimately issued specifying an alternative that the prior superior court order denying Alsavon's motion to refer his case back to the probation department for section 654 consideration be vacated and that a new and different order be entered granting the motion.

While the case was thus pending, a request was submitted by Alsavon's attorney to this court to retain and decide Alsavon's case on its merits. In the interim, the superior court complied with the available alternative. However, since this case presents an issue of broad public interest that is likely to recur, in that, in addition to the continued operation of the center in issue, new juvenile justice centers are being contemplated in Los Angeles County modeled on the same format as the one herein involved, we exercise our "inherent discretion to resolve [the] issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)[2]

DISCUSSION

1. *Background of the center and its operation.*

Alsavon's contention that the Juvenile Justice Center's intake process does not comport with the statutory requirements of sections 652, 653, and 654, requires that we scrutinize the center's setup and procedures.

Initially, in 1973 an Ad Hoc Commission on Juvenile Justice composed of the Director of the California Youth Authority, the District Attorney of Los Angeles County, the Chief of the Los Angeles Police Department, the Presiding Judge of the Los Angeles County Court and the Presiding Judge of the Los Angeles County Juvenile Court, the Superintendent of the Los Angeles City Schools, the Chief Probation Officer of Los Angeles County, the Los Angeles County Sheriff, the Los Angeles City Attorney and the president of the Urban Coalition, appointed a subcommittee to develop an experimental plan for the im-

---

[2]We are advised that the Northeast Juvenile Justice Center began full operation this Spring.

plementation of a juvenile justice center in Los Angeles County. This subcommittee consisted of 11 somewhat lesser public officials, representing similar agencies.

Available to us for review is a copy of the 1974 Juvenile Justice Center's Proposal which includes among other items, the background, rationale, test area, objectives and referral and intake processes. The synopsis indicates the "proposal sets forth a general plan for coordinating the efforts of the component parts of the Juvenile Justice System within a specific geographical area of the County for the purpose of developing and demonstrating a more *efficient* and more *effective* way to alleviate the problem of juvenile crime."

The first center was located at 7625 South Central Avenue in Los Angeles and brought together under one roof the persons and agencies dealing with juvenile crime allegedly to help reduce delays involved in making contacts among themselves and others and to coordinate policies and practices. The center staff consists of a panel of five persons chaired by a probation officer, with another representative of the probation department, one designated from the Los Angeles Police Department, one from the Los Angeles County Sheriff's Department, and a representative from the Los Angeles City Schools. "A primary objective is to reduce juvenile delinquency by providing a 'team' approach to the problem...."

Referring agency representatives work up case information and present it to the panel.

The declaration of Richard L. Newman sets forth the following pertinent information. He has been the Director at the Juvenile Justice Center in question for 14 months, a director for 6 years, and employed by the Los Angeles County Probation Department for 22 years. He avers familiarity with juvenile law and internal probation department policies concerning intake, detention, filing of petitions in juvenile court and supervision of juveniles, formal and informal.

He maintains that the 1974 Juvenile Justice Center Proposal presents an accurate description of the purposes and operation of the center at the time the Alsavon case was referred to it. The panel at the center meets regularly to discuss and make recommendations relating to the disposition of each case involving a minor who has been arrested. The

panel considers each case on an individual basis and weighs various alternative dispositions, including section 654 supervision.

Newman declares that "[t]he democratic process does not operate to determine the disposition of a case. I, or the acting Director in my stead . . . have the exclusive authority, and do exercise that authority in each and every case, to decide what course of action will be taken. The decision, therefore, is made by the Probation Department." The probation department chairman "leads discussion of cases reviewed; *makes intake disposition after hearing presentation by referring agency and recommendations of other panel participants.*" (Italics ours.) "The Chairman has the authority and responsibility to make an appropriate in-take [*sic*] disposition regardless of the recommendations of panel members."

Newman expresses familiarity with the Alsavon file and indicates the case was handled in the same manner described above. Information regarding Alsavon was presented to the panel and included: a description of the alleged offense; the role of Alsavon therein; his school attendance, achievement and behavior; and a review of his prior arrest history. Two of Alsavon's seven companions in the frozen burritos caper were placed on section 654 informal probation.

## 2. *Alsavon's contentions in light of the center's policies and procedures.*

■ Alsavon's primary concern, citing to *Marvin F. v. Superior Court* (1977) 75 Cal.App.3d 281 [142 Cal.Rptr. 78] and *Raymond B. v. Superior Court* (1980) 102 Cal.App.3d 372 [162 Cal.Rptr. 506], is that the operation of the center's panel "unlawfully divests the probation officer of his sole discretion regarding the intake function of the juvenile court." He contends that the probation officer improperly delegates his authority to the panel.

Section 652 imposes upon the probation officer, when the officer has cause to believe that there is within the county a person within the provisions of section 601 (minors habitually disobedient or truant) or 602 (minors violating laws defining crime and failing to obey court orders), the duty to immediately make such investigation as he deems necessary to determine whether proceedings in the juvenile court should be commenced. Section 653 requires the same responsibility of the probation officer when any person *applies* to the probation officer to commence proceedings.

The court in *In re Raymond B. v. Superior Court, supra*, 102 Cal. App.3d at page 376 proclaimed that section 653 "mandates the probation officer to make an investigation in the first instance to determine whether proceedings in the juvenile court should be commenced or the minor diverted to a program of informal probationary supervision under section 654 . . . ."

However, neither the provisions of section 652 nor the opinion in *Raymond B. v. Superior Court, supra*, 102 Cal.App.3d 372, imposes on the probation department a duty to investigate a case in any particular manner or to contact the parents before filing a petition. (*In re Bacon* (1966) 240 Cal.App.2d 34, 43-44 [49 Cal.Rptr. 322].) Under somewhat comparable circumstances, the court in *In re Bacon, supra*, stated at pages 43-44: "Appellants Bacon, Howard and Dinaburg moved to dismiss the petitions on the ground that the probation department had not made the proper investigation prior to filing the petitions. . . . [¶] In *In re Peterson*, 56 Cal.App.2d 791 . . . the appellate court was called upon to interpret the meaning of Section 721, which was the predecessor of Section 652 and provided that prior to filing a petition in the juvenile court 'the probation officer . . . shall make such investigation as he deems necessary . . . .' In holding that it was not mandatory under Section 721 for the probation officer to make an investigation . . . before filing a petition, the reviewing court stated as follows: 'He is required to make only "such investigation as he deems necessary," which vests a discretion in him to make or not to make an investigation in certain cases. If he failed to make an investigation in this case we must presume that he was exercising the discretion given him under the statute.' [Citation.] This holding was followed in *In re Staser*, 84 Cal.App.2d 746 . . . wherein it was also held that it must be presumed from the fact that the probation officer filed a petition, even though unverified, that she investigated the facts and approved the filing of charges. [¶] In the light of the holding in these cases, we conclude that the probation department could, in the instant cases, commence these proceedings . . . without making a preliminary investigation. . . ."

Similarly, in *Raymond B. v. Superior Court, supra*, 102 Cal.App.3d 372, 376-377, the court reiterated: "[S]ection 653 requires only that the probation officer make such investigation '*as he deems necessary*' . . . . This language is interpreted in *Marvin F. v. Superior Court*, . . . 75 Cal.App.3d 281, as requiring the probation officer to 'make whatever investigation he thinks is reasonable for the exercise of his discretion.' [Citation.]" (Original italics.)

The record before us indicates that the probation department conducted a preliminary investigation before filing the petition in Alsavon's case in that the panel had before it information relating to the alleged offense and Alsavon's part in it, his school record and his prior arrest history.

The record also discloses that a probation officer, if not Director Newman, exercised exclusive authority to file a petition. The fact that he did so after taking into consideration the recommendations of the other members of the panel does not amount to a divesting of his discretion, nor a delegation of duty to exercise that discretion.

This case is distinguishable from *Marvin F. v. Superior Court, supra,* 75 Cal.App.3d 281 cited by Alsavon. There, the court concluded that an agreement between the Alameda County Probation Department and the district attorney which operated to eliminate the independent exercise of discretion by the probation department in determining whether to commence juvenile proceedings was contrary to the statutory scheme contemplated by sections 652 and 653. Here, the record reflects that the recommendations of other panel members were purely advisory and that the probation officer made the final decision to commence proceedings.

■ As to Alsavon's complaint that the panel procedures operate to prevent a thorough investigation regarding possible section 654 probation, including the alleged right of a minor and his parents to be interviewed, a review of statutory and case law does not reveal any such right, although the practice could be considered advantageous.

As alleged by Alsavon, rule 1307(c) of Juvenile Court Rules of the California Rules of Court entitled "Settlement at intake—factors for probation officer to consider," includes "(5) [t]he attitude of the minor and the parent or guardian . . . ." We recognize that the rules of practice and procedure adopted by the judicial council have the force of law when such rules do not transcend legislative enactments. (*Cantillon v. Superior Court* (1957) 150 Cal.App.2d 184 [309 P.2d 890].) However, that rule would interfere with the probation officer's making such investigation "as he deems necessary" (§§ 652, 653), and his right to "make whatever investigation he thinks is reasonable for the exercise of his discretion." (*Marvin F. v. Superior Court, supra,* 75 Cal.App.3d 281, at p. 289.) Panel procedures are not conducted in secret and do not pre-

clude the appearance of minors and/or parents pursuant to request, nor the interview of minors and/or parents.

■ Also raised in this writ is Alsavon's claim that pursuant to center policies and practices, the probation department has abandoned its informal supervision program under section 654, thus denying a juvenile that option. In clarification of said allegation, we are advised by the real party in interest by way of a letter exhibit that in lieu of section 654 supervision, the probation department has established a diversion program. This program calls for the probation department to evaluate each case and to make the initial decision for diverting the minor. The program envisions supervision by a community-based organization rather than by the probation department. Whereas as suggested in the letter, such supervision may be superior to that conducted by the overburdened probation department, we do not determine in this opinion whether the described program would conflict with the mandate of section 654 or whether it would qualify under said section.

We do make the observation that any overall probation department policy eliminating section 654 informal supervision would have the effect of also eliminating any investigation directed toward the exercise of discretion to place a juvenile in that preferable option as declared by the Legislature. Such a policy would seem to be in conflict with the statutory scheme for the processing of applications. (*Marvin F.* v. *Superior Court, supra*, 75 Cal.App.3d 281, at p. 290.)

■ Alsavon's concern that there is no provision for notice as to time, place and purpose of a panel meeting to minors whose cases are to be considered by the panel, nor any minutes or written record of what occurs for review is misplaced. The receipt by the probation officer at the investigatory stage of recommendations from other panel members does not convert the panel process into a court proceeding affording Alsavon the full panoply of due process rights including notice and hearing. Such rights attach at the time of appearance before the juvenile court.

Turning to Alsavon's claim that his treatment at the hands of the center's panel violated his constitutional right of equal protection, we note that the area of Los Angeles County selected for the pilot program of a juvenile justice center and the operational facets of the program do not appear to have been arbitrarily selected or instituted. An experimental and innovative approach was recommended by experts in the

field of juvenile delinquency after due deliberation. No one can question the county's rational and compelling interest in the rehabilitation of its juveniles and the safety of its populace. Further, the statistics in this record do not disclose that the different handling of juveniles at the center amounts to a denial of equal protection of the laws.

The determination of well-meaning governmental officials to bring about greater efficiency and effectiveness in the juvenile justice system is a commendable one. Surely juvenile crime is devastating to the young people involved, their parents, relatives, friends, the victims, and society in general, and the distinct limitations of the present system are well known.

Placing the issues before us in proper perspective, we deem that the panel approach, enabling the responsible probation officer to weigh the input and recommendations of other interested and knowledgeable experts in their respective fields, does not appear to be per se violative of any statutory or case law. A decision thus arrived at can constitute the necessary investigation for the exercise of the probation officer's discretion and is not a delegation of his power or duty. And, whereas interviewing a minor and/or his parents as part of the investigation could be considered preferable, it is not mandated, and failure to do so is not an abuse of discretion.

## CONCLUSION

Even though this case has been mooted, for the record we conclude that the trial court did not abuse its discretion in denying the motion for reconsideration pursuant to section 654. In a minute order reflecting the denial of the application for rehearing, the judge is recorded as stating: "The record indicates that denial of 654 supervision was made by the Probation Officer after consideration by a panel. Nothing in the law restricts the probation officer in considering the views of others in arriving at his decision."

That statement embodies the thrust of this opinion. However, we believe a caveat is in order. In the laudable pursuit of more efficiency and effectiveness in the juvenile justice system by whatever approach, care must be taken by probation officers to strictly adhere to the legislative mandates of all the applicable sections of the Welfare and Institutions Code, lest the abuses Alsavon herein complains of creep into the system. Mechanical policies for automatic and categorical processing must

be avoided and the elementary requirements of individualized justice and due process must be maintained. (*In re William M.* (1970) 3 Cal.3d 16, 31 [89 Cal.Rptr. 33, 473 P.2d 737].)

Caution must be exercised to maintain a clear demarcation of the roles and responsibilities between probation officers on the one hand and the panel on the other. The use of such forms as the 1120 herein involved should reflect that the crucial decision as to the juvenile's future was in fact made by the probation officer. Also, it must be borne in mind that juveniles are entitled by law to the least restrictive disposition consistent with a probation officer's exercise of discretion following an investigation. (*In re Todd W.* (1979) 96 Cal.App.3d 408, 419 [157 Cal.Rptr. 802]; *Marvin F.* v. *Superior Court, supra,* 75 Cal.App.3d 281, at p. 289.)

We can find nothing in the law to prevent the establishment of a juvenile justice center, provided the legislatively prescribed independence of the probation department is maintained. A readily identifiable and accessible juvenile justice center functioning within a community may well heighten citizen awareness and involvement in the prevention of delinquency and the rehabilitation of delinquents. The concept is worthy of a try.

The alternative writ of mandate is discharged and the petition is dismissed as moot.

Potter, J., and Lui, J., concurred.

A petition for a rehearing was denied November 6, 1981, and petitioner's application for a hearing by the Supreme Court was denied December 16, 1981. Bird, C. J., and Newman, J., were of the opinion that the application should be granted.