[L.A. No. 31524. Nov. 22, 1982.]

CHARLES S., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Wilbur E. Littlefield, Public Defender, Kenneth I. Clayman, John Michael Lee and Jack T. Weedin, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Suzanne Person, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**BROUSSARD, J.**—Charles S., a minor, petitions for a writ of mandate or prohibition to compel respondent court to order that he be placed on informal pro-

bation under Welfare and Institutions Code section 654.[1] The question presented is whether the court and a probation officer abused their discretion in refusing informal probation on the ground that Charles S. and his family were unable to make restitution to the victim of a theft.

On September 15, 1980, a petition was filed under section 602 charging that Charles had violated Penal Code sections 459 (burglary) and 496 (receiving stolen property). The charges arose out of the theft of go-carts valued at $2,500 and involved Charles, his brother and a third juvenile.[2]

At his arraignment, Charles was referred to the probation officer for an investigation of his suitability for voluntary informal probation pursuant to section 654. The office reported that Charles was an "eminently suitable" candidate for probation and that he had met all of the probation department's standards for the program, except that he was unable to pay his fair share of restitution to the victim. Due to this fact, the department recommended that formal proceedings against Charles begin.

According to the officer's testimony, department policy requires that restitution be paid as a condition of probation. Although the amount due is based on the dollar amount of loss to the victim, full restitution is not required in every case. The exact payment is set by the probation officer based on the ability to pay and the department's responsibility to the community.

During the investigation, the probation officer assigned to the case had attempted to work out a schedule of restitution for Charles and his parents. Although he believed that Charles would be able to pay his full share of restitution, $833, over the period of a year, he felt the section 654 informal probation program was inappropriate because it was limited to a six-month period. A tentative program was then set up whereby Charles would agree to pay $550 of the $833 restitution. A "good-faith" payment of $250 would be made immediately, followed by payments of $50 per month for the next six months.

Charles and his parents, however, were unable to raise funds to make the $250 good-faith payment, despite efforts to borrow the money from family and friends. The trial court sent the matter back to the probation department for further investigation.

At the next court hearing, the probation officer conceded that the family was in "dire financial straights" and had made efforts to raise the money. Charles'

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

[2] Petitions were also filed against petitioner's brother and the other juvenile. Both were placed on formal probation and ordered to pay restitution.

brother was on formal probation, and the family was making restitution on the brother's behalf. Charles was not attending school, although he planned to take the high school proficiency test within the next few months. He was working full-time at a custom furniture manufacturing business operated by his parents. Charles' mother testified that he was paid a salary of only $10 per week for his work, but that he was receiving training so that he could some day take over the business. The business was not doing well and, according to the mother, it was "not paying its own way." The probation officer concluded that except for their inability to make restitution, petitioner and his family qualified for probation under section 654.

The juvenile court expressed doubt as to whether it had authority to order the probation department to reconsider its recommendation. The court concluded that even if it had such authority, it would not send the matter back, as the department had not abused its discretion. The court expressed concern that Charles was not in school and that he was working on a volunteer basis for a marginally successful business, instead of attempting to develop useful skills for the future. It then set a date for hearing on the merits of the case.[3]

### 1. JUVENILE COURT AUTHORITY TO DIRECT PROBATION OFFICER TO PLACE MINOR ON INFORMAL PROBATION.

Upon receipt of allegations that a minor has committed a public offense, the probation officer is required by section 653 to make an immediate investigation to determine whether juvenile court proceedings should be commenced. After investigation he has three courses of disposition: First, if he determines that proceedings should be commenced, he refers the matter to the prosecuting attorney. (§ 653.) Second, he may take no action. (*Id.*) Third, he may institute a program of informal probation under section 654.[4] (*Marvin F.* v. *Superior Court* (1977) 75 Cal.App.3d 281, 288-289 [142 Cal.Rptr. 78].)

Section 654 reads, in part: "In any case in which a probation officer, after investigation of an application for petition or other investigation he is authorized to make concludes that a minor is within the jurisdiction of the juvenile court or will probably soon be within such jurisdiction, he may, in lieu of filing a petition to declare a minor a dependent child of the court or a minor or a ward of the court under Section 601 or requesting that a petition be filed by the prosecuting attorney to declare a minor a ward of the court under Section 602 or subsequent to dismissal of a petition already filed, and with consent of the minor and the minor's parent or guardian, delineate specific programs of super-

---

[3]The hearing date has been continued pending the determination of this proceeding.

[4]If the probation officer does not refer the matter to the prosecuting attorney, prosecutorial review may be invoked in accordance with section 655.

vision for the minor, for not to exceed six months, and attempt thereby to adjust the situation which brings the minor within the jurisdiction of the court or creates the probability that he will soon be within such jurisdiction. Nothing in this section shall be construed to prevent the probation officer from filing a petition or requesting the prosecuting attorney to file a petition at any time within said six-month period. If the probation officer determines that the minor has not involved himself in the specific programs within 60 days, the probation officer shall immediately file a petition or request that a petition be filed by the prosecuting attorney. However, when in the judgment of the probation officer the interest of the minor and the community can be protected, the probation officer shall make a diligent effort to proceed under this section. . . ."

■ ■■■■■ Although the section is silent as to which factors the probation officer should consider in determining eligibility for informal probation, California Rules of Court rule 1307 specifies several factors including the seriousness of the offense, the ability of the minor and his parents to resolve the matter, the attitude of the minor and his parents, and other circumstances involving the welfare and safety of the minor and the protection of the public.[5]

■ Section 654 initially places the determination whether to institute informal probation or to file court proceedings in the discretion of the probation officer. The determination whether to proceed by informal probation or to seek court proceedings may not be delegated to the prosecuting attorney. (*Raymond B.* v. *Superior Court* (1980) 102 Cal.App.3d 372, 375 [162 Cal.Rptr. 506]; *Marvin F.* v. *Superior Court, supra,* 75 Cal.App.3d 281, 288 et seq.)

■ While it is apparent from the statutory scheme that only the probation officer initially may place the juvenile on informal probation, it is equally ap-

---

[5]Rule 1307(e) provides: "In determining whether a program of informal supervision of the minor should be undertaken, the probation officer shall consider:

"(1) Where the alleged condition or conduct is not considered serious, whether the minor has had a problem in the home, school or community which indicates that some supervision would be desirable;

"(2) Whether the minor and the parents seem able to resolve the matter with the assistance of the probation officer and without formal juvenile court action;

"(3) Whether further observation or evaluation by the probation officer is needed before a decision can be reached;

"(4) The attitude of the minor and the parent or guardian;

"(5) The age, maturity and mentality of the minor;

"(6) The prior delinquent history, if any, of the minor;

"(7) The recommendation, if any, of the referring party or agency;

"(8) The attitude of any affected persons;

"(9) Any other circumstances which indicate a program of informal supervision would be consistent with the welfare and safety of the minor and the protection of the public."

The rule establishes the factors to be considered by the probation officer on the basis of his information, whether obtained by investigation or otherwise. The rule does not impose a duty to investigate. (*Alsavon M.* v. *Superior Court* (1981) 124 Cal.App.3d 586, 594 [177 Cal.Rptr. 434].)

parent from the provisions of section 654 that once a petition under section 602 is filed, institution of informal probation is no longer solely the province of the probation officer, but that informal probation will be instituted on the basis of court action. The section provides for informal probation in lieu of seeking a section 602 petition "or subsequent to dismissal of a petition already filed." The quoted provision makes clear that after court proceedings are commenced, informal probation is to be based on a court determination. Only the court may dismiss the section 602 petition, and neither the district attorney, the minor's counsel nor the probation officer can interfere with the exercise of judicial power. (*Raymond B.* v. *Superior Court, supra,* 102 Cal.App.3d 372, 378-379.)

Under the statutory scheme, it is further apparent that after the section 602 petition is filed, the probation officer may not be permitted to reject the judge's determination to dismiss and initiate informal probation. Section 654 provides that the probation officer shall make a "diligent effort" to proceed under the section when in his judgment the interest of the minor and the community can be protected. When the judge determines to dismiss the section 602 petition in favor of informal probation, he obviously has determined that the dismissal is in the interest of the minor and the community can be protected, and the probation officer, an officer of the court, may not impeach the court's judgment.

The Juvenile Court Judicial Manual, prepared in 1979 by Judge Richard P. Byrne, recognizes the powers of the court to correct probation department abuses. The trial court's concern that it could not order informal probation is unfounded. If, in its judgment, formal proceedings are not appropriate, it may dismiss the section 602 proceedings based on its findings of appropriate informal probation. The probation officer must, of course, comply with those findings.

2. RESTITUTION AS PART OF INFORMAL PROBATION.

The principle that an offender can be required, in proper cases, to make restitution to his victim is an accepted one. Not only is restitution specifically authorized as a condition of probation for adult offenders (Pen. Code, § 1203.1), but several statutes authorize restitution orders for juvenile offenders. While section 654 does not expressly mention restitution, section 731 empowers the court to order restitution from a minor adjudged a ward of the court. Section 730 provides that the court may require the minor to go to work in order to make reparation to the victim. Section 729, enacted in 1981, goes even farther and requires the court to order restitution as a condition of probation in cases of battery, unless it is specifically found that such a condition would be inappropriate.

It is not disputed that a requirement of restitution may serve a rehabilitative function consistent with the purposes of Juvenile Court Law. *In re Ricardo M.*

(1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291] recognized that restitution may serve the rehabilitative purpose of juvenile law, even though it also accomplishes other goals. (*Id.,* at p. 748.) Thus, although restitution serves the obvious function of compensating the victims of crime, it also impresses upon the offender the gravity of the harm he has inflicted upon another, and provides an opportunity to make amends. As one commentator has noted, "[r]estitution may have a positive treatment connotation. It offers the individual something within reason that he can do here and now, within the limits of his ability, to demonstrate to *himself* that he is changing. A fine is punitive. A jail sentence is retributive. But restitution makes sense." (Dressler, Practice and Theory of Probation and Parole (1969) p. 241; see also *People* v. *Richards* (1976) 17 Cal.3d 614, 622 [131 Cal.Rptr. 537, 552 P.2d 97]; *People* v. *Lent* (1975) 15 Cal.3d 481, 486-487 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Miller* (1967) 256 Cal.App.2d 348, 356 [64 Cal.Rptr. 20]; Jacob, *Reparation or Restitution by the Criminal Offender to His Victim* (1970) 61 J. Crim. L. C. & P. S. 152, 156-157.) Restitution, then, can be a valuable tool of rehabilitation. As it is directly related to the crime, restitution can, if proper in the circumstances, lead the minor to realize the seriousness of his crime, and to accept the responsibility for it.

■ While conceding the rehabilitative function of restitution, Charles objects to the fact that the restitution schedule was apparently directed at his parents, rather than just himself. However, the program of informal probation contemplated by the statute requires the full cooperation and support of the minor's family. The program can be instituted only with the consent of the minor and the minor's parent or guardian. The guidelines provided by rule 1307 state that the probation officer shall consider the attitude of both the minor and his parents, and the ability of the minor and his parents to resolve the matter informally. The parents must be an integral part of any rehabilitative program. A requirement that they show their willingness to assist the program is neither unfair nor unreasonable. If the parents are unwilling to assume their share of responsibility for the minor by contributing toward restitution, a question is raised as to whether they will be able to provide him with the necessary help and guidance during the probation period.

■ Charles further contends that the requirement of restitution based upon the arbitrary decision of the probation officer as to the amount of damages has been substituted for the numerous safeguards to which he would be entitled in a civil action, such as the right to present counterclaims, cross-complaints, and trial by jury.

■ The Legislature has provided for restitution where appropriate as well as informal probation, and we must endeavor to give effect to both provisions.

Accordingly, the fact that restitution is appropriate should not disqualify a deserving juvenile from the benefits of the program.

■ Obviously, an informal disposition does not include all of the elements of formal judicial proceedings. Section 654 is intended to apply to cases where the need for probation is accepted, and all can agree to a program of rehabilitation. (See, Rep. of Governor's Special Study Com. on Juvenile Justice (1960) Recommendation No. 21; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 290.) The statute by its terms requires the consent of the minor and his parents to the program designed by the probation officer, and if there are differences, consent may be withheld. The right to withhold consent coupled with the juvenile court's power, after the matter is referred to it, to dismiss court proceedings and order informal probation provide an effective safeguard against arbitrary decision of the probation officer.

### 3. INABILITY TO MAKE RESTITUTION.

■ Charles contends that the probation officer and the juvenile court abused discretion by denying informal probation when it was conceded that he was a proper candidate for informal probation except that due to his and his family's indigency he was unable to pay the amount of restitution fixed by the probation officer. Charles contends that the amount of the restitution requirement resulted in a denial of equal protection.

We are satisfied that there was an abuse of discretion, and it will be unnecessary to reach the constitutional issue. Nevertheless, the reasoning of equal protection cases is persuasive in evaluating the exercise of discretion, and our analysis starts with those cases.

In *Williams* v. *Illinois* (1970) 399 U.S. 235 [26 L.Ed.2d 586, 90 S.Ct. 2018], the defendant, an indigent, was convicted of petty theft and was given the maximum sentence provided by law, one year imprisonment and a $500 fine, and taxed $5 in court costs. As permitted by statute, the judgment directed that in the event of nonpayment of the fine and the costs, the defendant was to remain in jail to pay off the obligation at the rate of $5 per day.

The United States Supreme Court stated: "[W]e conclude that an indigent criminal defendant may not be imprisoned in default of payment of a fine beyond the maximum authorized by the statute regulating the substantive offense. [¶] . . . Here the Illinois statute as applied to Williams works an invidious discrimination solely because he is unable to pay the fine. On its face the statute extends to all defendants an apparently equal opportunity for limiting confinement to the statutory maximum simply by satisfying a money judgment. In fact, this is an illusory choice for Williams or any indigent who, by defini-

tion, is without funds. [Fn. omitted.] Since only a convicted person with access to funds can avoid the increased imprisonments the Illinois statute in operative effect exposes only indigents to the risk of imprisonment beyond the statutory maximum. By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment. [Fn. omitted.]" (*Williams* v. *Illinois, supra,* 399 U.S. 235, 241, 242 [26 L.Ed.2d 586, 593].)

We applied the reasoning of *Williams* to a case where the confinement of an indigent defendant for failure to pay the fine did not exceed the statutory maximum. In *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999], two defendants were convicted of arson, and the trial judge suspended imposition of sentence upon conditions including that each pay a fine of $2,500 plus a penalty assessment of $625 or in lieu of payment serve one day in jail for each $10 unpaid. While the other defendant was able to pay the fine and did so, Antazo was an indigent and was jailed upon his inability to pay the fine and penalty assessment. The court ordered him discharged from custody.

The court pointed out: "[A] sentence to pay a fine, together with a direction that a defendant be imprisoned until the fine is satisfied, gives an advantage to the rich defendant which is in reality denied to the poor one. 'The "choice" of paying $100 fine or spending 30 days in jail is really no choice at all to the person who cannot raise $100. The resulting imprisonment is no more or no less than imprisonment for being poor, . . .' To put it in another way and in the context of the present case, when a fine in the same amount is imposed upon codefendants deemed equally culpable with the added provision for their imprisonment in the event of its nonpayment, an option is given to the rich defendant but denied to the poor one." (3 Cal.3d at p. 108.)

Concluding that wealth is a suspect classification and that the California statutes necessarily involved different treatment for rich and poor defendants, the court considered whether the state has a compelling interest in imprisonment of indigents for nonpayment of fines. Although the state has a strong interest in the payment of fines both in collecting funds for the public treasury and in serving its interests in rehabilitation and reformation, we recognized that the "threat or the actuality of imprisonment" could not "force a man who is without funds to pay a fine," and there are less intrusive means to further the other state interests. (3 Cal.3d at pp. 108-115.)

Similar reasoning is applicable to indigent juveniles. While restitution may be a useful condition of probation in many cases, it cannot be demanded when the minor and his family are unable to pay. No rehabilitative purpose can be served

by requiring the minor to do something he is incapable of doing. Therefore, a minor cannot be denied probation under section 654 solely because of his inability to pay restitution to his victim. Although he may have no vested right to receive informal probation, he cannot be denied such treatment because of his poverty. Similarly, a minor cannot be denied formal probation under section 725 because of an inability to pay restitution.

This rule does not prevent a court or a probation officer from requiring an offender to make all efforts within his ability to provide reparation to his victim. The minor may be required, for instance, to pay that portion of restitution of which he is able. Furthermore, he may be required to make a good-faith search for employment in order to make reparation. (See, e.g., *State of New Jersey* (1976) 70 N.J. 488 [361 A.2d 513, 522, fn. 4].) And the state's interest in rehabilitation and reformation can be served by means less intrusive than denial of probation of indigents.

In the present case, the probation officer recognized Charles' financial difficulties and reduced the total amount of restitution required. The officer, however, conceded that this sum was still beyond the family's ability to pay. He therefore abused his discretion in requiring this level of restitution.

While the judge stated his concern that Charles was not in school, it is apparent that his determination to set the matter for hearing on the merits was based in part on his conclusion that the probation officer had not abused his discretion in rejecting informal probation.

Let a peremptory writ of mandate issue directing respondent court to reconsider its denial of informal probation and to proceed in accordance with the views expressed herein.

Bird, C. J., Mosk, J., Newman, J., and Lui, J.,\* concurred.

**RICHARDSON, J.,** Dissenting.—While I concur with the majority's conclusions that, as general propositions, (1) the juvenile court has the power to place a minor on Welfare and Institutions Code section 654 probation, (2) restitution may be required in proper instances, and (3) an abuse of discretion occurs when a minor is denied informal probation solely because of inability to pay restitution, I respectfully dissent from the majority's application of these principles to the present case. The nub of my disagreement is (1) that we should respect the trial court's discretionary act, and (2) that the record shows there were valid reasons, other than the minor's indigency, which fully justified the trial court's rejection of informal probation.

---

\*Assigned by the Chairperson of the Judicial Council.

The majority's holding is premised in part on the factual assertion that probation department "policy requires that restitution be paid as a condition of probation." (*Ante*, p. 744.) Although the majority recognizes that full restitution is not always required, I find that the record does not show that restitution, whether in full or in part, is required in every case. When questioned, the probation officer who testified at the minor's hearing on the issue of probation stated that a determination had been made "that according to departmental policy he [the minor] is not qualified for 654 probation." After being asked what departmental policy prevented qualification, he answered "That we would have a reasonable expectation that he could meet with all of our conditions in a six-month voluntary program." *In this case* the particular *condition* which was not met was compliance with the restitution requirements the probation department had determined were necessary. One factor in the probation officer's determination regarding the minor's ability to pay and the appropriate amount of restitution, was his conclusion that "He [the minor] is working pretty steadily and he could make restitution, substantial restitution, over a period of a year." As the majority indicates, the probation officer attempted to establish a program to meet the minor's problems in making restitution, but no successful plan could be developed.

Finally, on redirect examination, the probation officer specifically stated that no full restitution was required and that adjustment could be made "based on the ability to pay[,] based on our responsibility to the community and based on the reasonableness of our ability to collect that amount given the period of time." From the above, I see no definitive indication that in every case, pursuant to departmental policy, restitution was required or informal probation must be denied. While I fully agree with the premise that a requirement of restitution in every case which might penalize a minor for poverty would be improper, such a policy is not reflected in the record here. The factual issue is important because I think that it colors the majority's later analysis of the trial court's actions.

As the majority notes, the juvenile court has the power to dismiss a section 602 petition in favor of informal probation if it believes that to do so serves the interests of the minor and the community. "Only the court may dismiss the section 602 petition, and neither the district attorney, the minor's counsel nor the probation officer can interfere with the exercise of judicial power. (*Raymond B. v. Superior Court* [1980] 102 Cal.App.3d 372, 378-379 [162 Cal.Rptr. 506].)" (*Ante*, p. 747.) The principal issue before us is whether the *trial court* abused its discretion in declining to place the minor on informal probation following the filing of a section 602 petition.

The majority finds the critical question to be "whether the court *and* a probation officer abused their discretion in refusing informal probation . . ." (*Ante*,

p. 744, italics added.) After concluding that the probation officer abused *his* discretion, the majority asserts that it is "apparent" that the trial court's determination not to grant informal probation was "based in part" on its conclusion that there had been no abuse of discretion by the probation officer. However, contrary to the suggestion of my colleagues, it appears from the record that the trial court, in refusing to dismiss the section 602 petition once filed, did *not* rely upon the minor's inability to pay restitution nor upon the belief that the probation officer had not abused his discretion. Rather, independently exercising *its* discretion, the trial court concentrated on the vagueness and lack of direction evident in petitioner's circumstances. The majority expressly recognizes that once a section 602 petition has been filed, "*Only* the court may dismiss the section 602 petition, and neither the district attorney, the minor's counsel nor the probation officer *can interfere with the exercise of judicial power.*" (*Id.*, at p. 747, italics added.) However, my colleagues fail to consider *independently* the trial court's exercise of that power.

The trial court first questioned its ability to refer the matter again to the probation department which, as the majority concludes, it surely had the power to do. The court noted further, however, that even if it had the power to do so, it would not use it, explaining: "One of the things that concerns me as judge, when I hear about somebody who has now turned 16, who is not in school, is waiting to take a test sometime in the future a month or more away here that he may or may not pass—these are times and periods that cannot be recovered. What is he doing in the meantime? He is working in a business that may or may not enjoy success where he is being paid $10 a week salary here. This is not, as I see it, the way to develop skills for the future that may help him in a future life here." Thus, rather than focusing on the minor's inability to pay, the court stressed the uncertainty and lack of direction in the young man's life.

In my view, it was not an abuse of discretion for the trial court to determine that it would be more appropriate under the circumstances to require a more formal supervision or one of longer duration than that available under section 654. "[A]s long as the section 602 petition is pending before the juvenile court, the juvenile court has the sole power to determine whether or not to dismiss the petition . . . ." (*Raymond B.* v. *Superior Court, supra,* 102 Cal.App.3d at pp. 378-379.) *The trial court* acted properly in concluding that the minor's status, including his vague plans, and his inability to pay restitution, disqualified him from a program of informal probation. Under circumstances as uncertain and indefinite as these, I do not read the applicable statutes as requiring the trial court to grant informal probation. The trial court could reasonably have rejected this alternative.

Giving sufficient and fair credence to the effect of the trial court's full statement of its reasons for denying probation and considering the proper scope of

our review of the trial court's discretionary exercise of its judgment in a section 602 proceeding, I believe that the record before us demonstrates no abuse of the trial court's authority.

Accordingly, I would deny the writ.

Reynoso, J., concurred.