Filed 6/23/14  In re C.O. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C.O., a Person Coming Under the Juvenile Court Law. | C074683 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.O.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV134071) |

A wardship petition (Welf. & Inst. Code, § 602)[1] was filed alleging the minor C.O. committed misdemeanor battery (Pen. Code, § 242), felony vandalism (Pen. Code, § 594, subd. (b)(1)), and robbery (Pen. Code, § 211).  The minor admitted to grand theft (Pen. Code, § 487, subd. (c)) as a lesser included offense of robbery; the unrelated

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

vandalism charge was dismissed for insufficient evidence and the battery charge was dismissed in the interests of justice. The juvenile court declared the minor a ward of the court and placed him on probation subject to various conditions including the payment of $66,361.36 in victim restitution.

On appeal, the minor contends the juvenile court erred in ordering the restitution. We affirm.

BACKGROUND

On May 28, 2012, John Serra was driving to a family barbecue when he saw a group of people in front of a liquor store. Serra knew something was going on as several people had their cell phones out. Serra pulled over to the side of the road about two and a half blocks away, looked out his rearview mirror, and saw a man on a bicycle and a woman walking behind him approach. He heard a discussion between the couple and one of them said, "Those guys jumped that guy and they have a weapon."

Serra turned his vehicle around to the other side of the street, where he pulled over and looked at what was happening. A man came walking by; Serra could tell he had been assaulted. Serra asked the man if he was okay. The man shook his head no and walked past Serra's vehicle.

As Serra watched through his side mirror, he saw another man and a teal green Camaro come up behind the man who had been assaulted. The man who was following started fighting with the assault victim. At the same time, the Camaro drove past Serra's car and pulled over. The minor and another male jumped out of the Camaro and headed to the fight.

Serra testified the minor "was about to join in with assaulting the gentleman." Assuming someone at the scene had called 911, Serra decided to try to stop the renewed assault on the already injured man. He testified, although he thought they had a weapon, he intended to "[t]ry to make them stop, tell them to stop, to leave him alone, to dissuade them." He "pulled [his] vehicle around right where they were assaulting him in the

2

middle of the street and pulled up really close and [he] got out and started yelling" at the minor "some expletives about you better f-ing leave this guy alone."

While Serra was pointing at the minor and yelling at him, the minor ducked down, rushed and tackled Serra. The minor tried to hit Serra while Serra "scuffled" with the minor. Serra eventually wound up on top of the minor, who was on the ground and behind Serra's vehicle. While Serra and the minor punched at each other, someone struck Serra from behind, causing him to fall over. The minor got up and started kicking and stomping Serra with his feet. Timothy W. joined the assault on Serra. The minor and Timothy W. kicked and punched the helpless Serra for five to six minutes as he lay on the ground, striking him "multiple times." Later, R.C. joined in the assault. After Serra sustained "several really vicious blows," he knew he had to get away. He eventually found an opening and was able, with difficulty, to escape.

The minor took a gold chain from Serra's neck in an initial assault, before the other assailants joined in and all three continued the assault. As a result of the attacks, Serra bore several wounds. There were visible footprints on his side, shoulder, and forehead. He had a bloody lip; his tongue had a chunk missing; there was a large bruise on his chin. More seriously, he suffered a punctured lung, three broken ribs, and cognitive impairment resulting in thought impairment and memory loss. "A lot of things are gray to [him] now when [he tries] to think."

Serra had been employed as an equipment maintenance technician helping to operate, troubleshoot, and maintain a cogeneration power plant facility. He was making $28 an hour for at least 40 hours a week, plus bonuses and occasional overtime. His reduced cognitive impairment caused by the attacks prevented him from safely working on dangerous equipment, leading to the loss of his job and an inability to engage in similar employment. He described his situation this way: "I don't think clearly anymore so it's really hard for me to think or put things together." He had lost $56,000 in wages since the attack.

3

The probation department recommended $14,995.36 in victim restitution, based on a claim submitted by Serra to cover medical expenses, lost wages, and the replacement cost of the necklace. The minor objected to the amount of restitution and requested a contested hearing.

Following the hearing, the parties submitted written briefs on the matter. The minor argued that the victim was entitled to restitution only for the necklace pursuant to section 730.6; restitution should not include medical expenses or lost wages because the victim assumed the risk of injury by engaging in mutual combat, or the restitution should be reduced by the victim's comparative fault. The prosecution argued for full restitution for all expenses and losses, including lost wages.

In a written order, the juvenile court ordered $66,361.36 restitution for medical expenses, lost wages, and the cost of the necklace. The court ruled the restitution was proper under sections 730 and 730.6, and that the doctrines of assumption of the risk and comparative negligence do not apply to the minor's intentional conduct.

DISCUSSION

The minor contends the restitution award was erroneous because his conduct was not a substantial factor in causing Serra's medical expenses and lost wages. The minor further claims Serra assumed the risk or was comparatively at fault by "inserting himself into a volatile situation."[2] He asks us to reduce the restitution by $61,477.36. We disagree with his reasoning and reject his request.

Section 730.6 is rooted in the California Constitution. (Cal. Const., art. I, § 28, subds. (a), pars. (1) & (3); (b), par. (13).) Restitution is thus mandated in all criminal cases with derivative loss. Section 730.6 is the statutory mechanism the Legislature adopted to govern restitution by wards. It codifies the court's constitutional duty to order

---

[2]     More aptly, Serra was a *good Samaritan* attempting to help a stranger under criminal assault.

4

restitution for all economic damages to a victim which result from a minor's commission of a criminal offense.[3] Restitution is limited to those economic losses caused by the minor's conduct for which he is declared a ward of the court pursuant to section 602. (*In re T.C.* (2009) 173 Cal.App.4th 837, 844 (*T.C.*).)

The minor argues he was never charged with assaulting Serra and never admitted to causing any injury to him other than stealing the necklace. Noting Serra's injuries were sustained only after the two other assailants joined him, the minor asks us to conclude Serra sustained his injuries after the theft and therefore the minor's acts were not a substantial factor in causing them.

Section 730.6 is not the only authority for victim restitution in a delinquency action. A juvenile court may also impose restitution as a condition of probation pursuant to the statute governing probation in delinquency cases, section 730. (*T.C., supra*, 173 Cal.App.4th at p. 845.) "[S]ection 730.6 specifies when restitution *must* be imposed. Section 730 states when restitution *may be* imposed as a condition of probation. In other words, as this court said recently in a different statutory context, section 730.6 'serve[s]

---

[3]    In pertinent part, section 730.6 provides: "(a)(1) It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor. [¶] (2) . . . [T]he court shall order the minor to pay, in addition to any other penalty provided or imposed under the law, both of the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h)." In relevant part, section 730.6, subdivision (h) provides: "A restitution order pursuant to subparagraph (B) of paragraph (2) of subdivision (a), to the extent possible, shall identify . . . the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602 . . . ." Section 730.6 "parallels Penal Code section 1202.4, which governs adult restitution." (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132, fn. omitted.)

5

as a floor, not a ceiling, for juvenile probation conditions. [Citations.]' [Citation.]" (*T.C.*, *supra,* at p. 845, original italics.)

"The juvenile court has wide discretion to select appropriate conditions [of probation]." (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) "In determining how best to rehabilitate a minor, the juvenile court should consider the broadest range of information. [Citation.] Consistent with section 730, the juvenile court 'enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile. [Citation.] That discretion will not be disturbed in the absence of manifest abuse. [Citation.]' [Citation.]" (*T.C., supra*, 173 Cal.App.4th at p. 845.) A probation condition that is not related to the minor's crime is nonetheless valid " 'as long as the condition is reasonably related to preventing future criminality. [Citation.]' [Citation.]" (*Id.* at p. 846.)

Serra sustained his injuries during an aggravated beating and stomping in which the minor participated and during the early part of which the minor stole a gold chain from around Serra's neck. Serra's testimony at the restitution hearing establishes that the minor was a willing participant throughout the grievous attack that left Serra seriously injured physically and cognitively impaired permanently, and thereby unable to return to his skilled, well paying occupation. Even if we were to assume, solely for purposes of argument, the group attack on Serra was unrelated to the minor's theft, it was nonetheless sustained criminal activity in which the minor participated.[4]

---

[4]    The rule of *People v. Harvey* (1979) 25 Cal.3d 754 that counts dismissed pursuant to a plea agreement cannot be used to enhance a defendant's sentence in the absence of a contrary agreement does not apply to the imposition of probation conditions in a delinquency case. (*T.C., supra,* 173 Cal.App.4th at p. 850.) Moreover, even if it is metaphorically considered a "dismissed" charge, Harvey does not apply to an original charge broken down to a lesser *included* or lesser *related* offense. (See *People v. Harvey,*

6

Requiring the minor to pay restitution for harm to another wrought during uncharged criminal misbehavior which is part of his sustained course of serious misconduct advances the law's dual objective of deterring criminality and fostering rehabilitation. "[R]estitution may serve a rehabilitative function consistent with the purposes of Juvenile Court Law. . . . [A]lthough restitution serves the obvious function of compensating the victims of crime, it also impresses upon the offender the gravity of the harm he has inflicted upon another, and provides an opportunity to make amends. . . . 'It offers the individual something within reason that he can do here and now, within the limits of his ability, to demonstrate to *himself* that he is changing' " (*Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 747-748, original italics.)

The minor's claim he shows little risk of reoffending is of no consequence. Ordering restitution for the life changing and grievous physical and cognitive injuries he helped inflict on Serra serves to impress on the minor the gravity and burden of his actions. It further serves to deter his future criminal conduct and foster his rehabilitation. It was therefore a thoughtful and valid exercise of the juvenile court's discretion to impose restitution as a condition of the minor's probation.

The minor's final contention, that the juvenile court erred in declining to apply assumption of risk or comparative negligence to the conduct of a recipient of a restitution award, and to perform a comparative negligence analysis, requires little discussion. While a court may apply the doctrine of comparative negligence to the conduct of a recipient of a restitution award in cases in which a minor or criminal defendant is criminally negligent, comparative negligence does not apply to restitution awards in cases in which a minor or criminal defendant commits an intentional crime. (*People v. Millard* (2009) 175 Cal.App.4th 7, 13, 41.)

---

*supra,* at pp. 758-759 [waiver rule not to apply to dismissed charges *transactionally related* to the offense].)

The juvenile court imposed restitution as a condition of probation because of the irreparable, debilitating harm inflicted on Serra deliberately by the minor and his criminal compatriots during their group assault on Serra. The minor asks us to extend *Millard* "to intentional crimes where highly unusual and extraordinary facts warrant the application."[5] We decline the invitation. Since the minor's conduct was intentional rather than negligent, the doctrines of assumption of the risk and comparative negligence do not apply to the restitution probation condition.

DISPOSITION

The order of the juvenile court is affirmed.

NICHOLSON , J.

We concur:

RAYE , P. J.

ROBIE , J.

---

[5] Unfortunately, the minor and his two compatriot assailants committed an atrocious crime which is neither unusual nor extraordinary, but all too common these days.