Filed 10/1/14  In re Dillon S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re DILLON S., a Person Coming Under the Juvenile Court Law. | D064181 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J227859) |
| v. | |
| DILLON S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis, Judge.  Reversed and remanded with directions.

Kleven McGann Law and Sarah Kleven McGann, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

Dillon S., a minor, appeals from a judgment finding him a person described in Welfare and Institutions Code[1] section 602, issuing a civil judgment for $567.26 in restitution, and terminating Dillon's wardship. Before entering judgment, the juvenile court denied Dillon's request to dismiss the People's section 602 petition (the 602 petition), ruling Dillon had not successfully completed his program of informal supervision under section 654 because he had not fulfilled the condition that he pay $567.26 in victim restitution. Proceedings on the 602 petition resumed, and Dillon admitted to one misdemeanor count of defacing property under Penal Code section 594.

Dillon asks this court to extend the reasoning of *Charles S. v. Superior Court* (1982) 32 Cal.3d 741 (*Charles S.*) to his dismissal request under section 654.2 and conclude his inability to pay restitution should not be grounds to deprive him of the benefits of informal probation. He further argues that under *G.C. v. Superior Court* (2010) 183 Cal.App.4th 371, the juvenile court should have determined and made a finding of his ability to pay the restitution order under section 742.16. Finally, Dillon contends the juvenile court's refusal to dismiss his petition violated his right to equal protection of the law under the United States and California Constitutions.

Though we conclude section 742.16 does not apply in the informal supervision context, we nevertheless reverse the judgment and remand the matter for the juvenile court to reconsider Dillon's motion. We agree that when Dillon raised an issue as to his financial ability to pay the restitution condition and counsel made an offer of proof on the

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

issue, *Charles S.* required the juvenile court to take evidence as to Dillon's present financial ability and efforts to meet the condition—if any—and the court then had discretion to rule that Dillon had successfully completed his program of informal supervision notwithstanding his failure to pay any amount toward restitution. Because the record suggests the court believed full payment of restitution was mandatory for Dillon to successfully complete informal supervision, it did not make its ruling informed of the full measure of its discretion. Further, because the court declined to take evidence on Dillon's financial ability and efforts, it had no basis to conclude he had not made a good faith effort to pay. Under the circumstances, we remand the matter for the juvenile court to reconsider Dillon's motion to dismiss, cognizant of the full extent of its discretion.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 2012, the People filed a section 602 juvenile delinquency petition alleging that Dillon had committed three misdemeanor offenses of defacing or destroying property belonging to the San Diego Metropolitan Transit Service (MTS) (Pen. Code, § 594) and one misdemeanor offense of possessing an item with the intent to commit vandalism. (Pen. Code, § 594.2.)

Dillon petitioned to continue the proceedings for six months and be placed on informal supervision under sections 654 and 654.2. The People did not oppose the petition, but asked for specific conditions of informal probation. In August 2012, Superior Court Judge Browder Willis granted Dillon's petition and without objection (with the exception of a request for a later curfew, which the court denied) ordered

3

various terms and conditions of informal supervision, including that Dillon pay MTS $567.26 in restitution, jointly and severally with his parents. During the hearing, Judge Willis asked Dillon: "Did you have the opportunity to go over the terms and conditions of this agreement?" Dillon responded, "Yes." Judge Willis ordered Dillon to return for a review hearing, telling him, "I'm going to adopt each recommendation contained within this agreement as an order of the court. That means you must comply with each and every one of these. . . . You must pay restitution in the amount of $527.26 to the victim, the metropolitan transit system. . . . You need to come in on [the next court date] having completed all the terms and conditions; otherwise, we'll be having discussions about going back to work on this petition." Dillon responded, "Okay," and the hearing concluded.

In February 2013, Dillon appeared for an informal supervision review hearing, this time before Judge Carlos Armour. Judge Armour granted Dillon a fee waiver for a graffiti class, deleted a requirement that he complete a work project, and continued the matter so that Dillon could complete the graffiti class and make restitution payments, which Dillon had not done. At that hearing, Dillon's counsel advised the court that Dillon was "currently looking for a job so he can make payments toward the restitution that's owed as finances are very tight for the family right now." Counsel asked for a 30-day

4

continuance so that Dillon could "finish that graffiti class and make some payments toward restitution."[2]

Dillon did not return for his next review hearing until June 20, 2013. During that hearing, over which Judge David Oberholtzer presided, Dillon asked the court to dismiss his petition under section 654.2. Though Dillon told the court, "I haven't paid anything [on restitution] yet," his counsel represented that Dillon was "more than willing to pay the restitution" and eventually would pay it, but had no money and was not yet able. Ultimately, after some discussion about whether the court could enter a "JV 790" [order for restitution and abstract of judgment (see *In re Timothy N.* (2013) 216 Cal.App.4th 725, 732, fn. 5)] and then dismiss the case, Judge Oberholtzer continued the matter to July 2, 2013, and ordered Dillon to appear. Dillon's counsel asked to appear for Dillon, advising the court that he and his family "have plans to go to Reno. As I mentioned, they're homeless right now. They're staying in a shelter. They have a home, and [Dillon] has a job waiting for him in Reno."

---

2       During the February 11, 2013 hearing, Judge Armour advised Dillon's counsel that Dillon "has to pay the restitution off in full before I can dismiss the petition. [¶] . . . [¶] . . . The law requires that [Dillon] pay off restitution fully before the court can grant the [section 654.2 dismissal]." In setting the next hearing date, Judge Armour reiterated: "And be mindful, Dillon, that the court has no authority if it isn't paid off, then the petition has to be reinstated and you'll have to start the case all over again." Dillon's counsel advised the court that Dillon's mother worked at a Subway franchise and was trying to get Dillon a job there. The court then deleted Dillon's work project requirement, stating, "I'd rather have him look for a job and get a job than do the work project. [¶] Dedicate your time to trying to find a job and pay off this restitution. I'll fund the graffiti class, delete the work project and we'll see you back on June 20th at 8:00 o'clock in Department 4."

A few days later, Dillon filed a motion to dismiss his petition under section 654.2. Stating he had met all of his conditions of informal probation with the exception of his obligation to pay restitution, Dillon argued he had nonetheless successfully completed his program of supervision under section 654, and under those circumstances the juvenile court had no discretion but to grant his request for dismissal. He argued the court could not deny dismissal as a benefit of informal probation based on his poverty. He also argued that an order denying his dismissal request based on financial status and his inability to pay would violate his Fourteenth Amendment right to equal protection. The People responded by asking the court to deny his request, revoke the grant of informal supervision and resume criminal proceedings on the 602 petition. In part, they argued Dillon waived the issue by failing to raise his inability to pay when the juvenile court imposed the restitution condition.

On July 2, 2013, Judge Willis held the review hearing, during which he considered Dillon's motion to dismiss. At the outset, Judge Willis stated he was inclined to deny the motion, explaining Dillon had entered into a contract to avoid the consequence of having his petition considered; that informal supervision "was an agreement to at least make an effort to pay. In addition . . . the victim has the right to have that condition satisfied. The issue of restitution needs to be addressed in some fashion and dismissal basically voids any issue of restitution. I don't think that's equitable or reasonable." Dillon's counsel advised the court that every dollar earned by Dillon and his parents went toward the homeless shelter where they lived, and he argued it would be unjust and unequal

6

treatment to deny dismissal based on his inability to pay restitution.[3] The court stated he

understood Dillon's and his family's poor financial situation and was not trying to worsen

it: "I am sympathetic. I understand exactly what you're saying and I am not saying that it

isn't a real problem. I'm not saying that your financial situation isn't horrific and a burden

on you clearly. And I'm not trying to make your financial situation worse." Judge Willis

continued: "Having said that . . . I'm not persuaded that there is a denial of right that you

are being treated differently. I think it's a mandatory requirement. What I'm willing to

do for you, we still have a couple months before the annual date. The 12-month [period]

runs July 3rd. The only real solution across the board is to vacate the order for informal

supervision and start proceedings on the case and then I would be willing, if this is

something you need to talk about, I would be willing to accept an admission on one of the

counts, set the restitution order, have you go to revenue and recovery and set up an

account with minimum payments. If that's a dollar month payment whatever. Show me a

good faith effort and make that dollar a month payment. You come back in here, that

dollar a month payment is carved in stone, there's an abstract, I will successfully

terminate the wardship. You're going to pay your financial obligation as part of the

---

3    Judge Willis responded in part to this argument by saying: "How do I disregard
the fact that there's this operative word 'all' of the conditions. . . . [R]estitution was part
of what you agreed to do. There wasn't any debate at that time that it would be an
extreme hardship stipulated. Even if that was indicated to the court or otherwise, it was
part of the agreement. All terms of the agreement. Looking at the larger picture of
rehabilitative goals and the issue of restitution, the court has never locked people into a
box based on that. There's a lot of leeway. One of the concepts of good faith effort is
open up the account and pay two dollars a month, pay five dollars a month. There is no
minimum required from revenue and recovery. All they require is a good faith effort. If
he had paid consistently one dollar a month, but to completely ignore the obligation?"

rehabilitative effort. I'll bend over backwards, but I'm not going to void and overlook the fact there's $500 that a person/victim is entitled to. Whether that victim gets a dollar a month and takes three years to pay it off, that's the victim's burden." The court ordered the parties to return the next day so Dillon could consult with his counsel.

The next day, Dillon's counsel asked the juvenile court to reconsider its ruling in light of section 742.16[4] and *G.C. v. Superior Court*, *supra*, 183 Cal.App.4th 371, which held section 742.16 applies in the context of a deferred entry of judgment under section 790. Counsel offered to have Dillon or his family give sworn testimony on the issue. After considering further arguments of Dillon's counsel and the People, the court denied Dillon's motion. It observed Dillon had made no attempt to pay at all, that he had raised the issue of his ability to pay at "the very last second," and that it had no documentation before it on Dillon's financial abilities: "There was never the attempt to pay, it was just

---

[4] "Section 742.16 is part of the Graffiti Removal and Damage Recovery Program enacted by the Legislature in 1994. (Stats. 1994, ch. 909, § 11, p. 4603 et seq.) Among other things, it requires minors who have committed acts of vandalism and other malicious mischief to repair or pay for the damage they cause. Subdivision (b) of section 742.16 applies when a public entity repairs or replaces property damaged by the minor. It provides, 'If a minor is found to be a person described in Section 602 by reason of the commission of an act prohibited by [Penal Code] Section 594 [among others], and the graffiti or other material inscribed by the minor has been removed, or the property defaced by the minor has been repaired or replaced by a public entity . . . the court shall determine the total cost incurred by the public entity for said removal, repair, or replacement . . . [and] shall order the minor or the minor's estate to pay those costs to the probation officer of the county *to the extent the court determines that the minor or the minor's estate have* [*sic*] *the ability to do so*.' (Italics added.) Section 742.16 contains other provisions relating to the minor's obligation to repair, replace, or clean up damaged property. Each subdivision authorizing the court to order monetary restitution requires the court to first find that the minor or his estate has the ability to pay. (See § 742.16, subds. (a)-(c).)" (*G.C. v Superior Court*, *supra*, 183 Cal.App.4th at p. 376.)

completely disregarded. There wasn't any effort to [go into] court and say this is what's happened. This is why I can't do this. And at the very last second, the day before everything ends, now we have this big issue of the inability to pay and I'm in a position where my back is against the wall statutorily as far as timeframe is concerned, this is the last day and I have to make a decision without any documentation on the inability to pay. That basically leaves the victim out in the cold. We could have had a hearing four months ago with documentation as to the inability to pay and we could have had discussion about it." The court expounded: "If we had had a discussion about [Dillon's] ability to pay at the very beginning, we would have had a discussion about how long it would have taken him to pay $594. We would have set something appropriate. But if I know up front there's no possible way you can make that payment, then I'm probably not going to grant a 654 [informal supervision] because again, the victim has a right to be compensated and made whole for their loss. If you're telling me right up front I can't meet a very basic condition, we're not going to enter into that agreement. But if we had entered in to an agreement and he had been paying at 5, 10, 15 dollars a month for the whole time and evidenced that good faith, I would have taken that into consideration as well."

The court stated it met its obligation to consider Dillon's ability to pay by its willingness to order Dillon to make payments at the lowest possible rate. Dillon's counsel then advised the court that Dillon wanted to enter a plea to count 1, and the court stated it would "accept the JV790 with an agreement to a minimum payment." Dillon's counsel responded, "As it turns out, Dillon has a job waiting for him in Reno." The court

9

asked Dillon: "Can you afford five dollars a month?" Dillon replied, "I have no problem paying for it."

Dillon was then sworn and admitted that in July 2011, he used a permanent marker to write on a cushion that belonged to the MTS in violation of Penal Code section 594. The court adjudged Dillon a person described by section 602, ordered him to pay $567.26 in restitution at five dollars a month until paid in full, and terminated wardship and jurisdiction. Dillon filed this appeal.

DISCUSSION

I. <em>Standard of Review</em>

The parties do not dispute that this court reviews the juvenile court's order for abuse of discretion. " 'An order of disposition, made by the juvenile court, may be reversed by the appellate court only upon a showing of an abuse of discretion. . . .' [Citation.] It is not the responsibility of this court to determine what we believe would be the most appropriate placement for a minor. This is the duty of the trial court, whose determination we reverse only if it has acted beyond the scope of reason." (*In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1135; see *In re Armondo A.* (1992) 3 Cal.App.4th 1185, 1189-1190 [juvenile court's decision on suitability for informal probation supervision is discretionary]; *In re N.M.* (2011) 197 Cal.App.4th 159, 171.)

A trial court abuses its discretion when it acts without knowing its discretion. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 847-848 [discretion in sentencing decisions]; *People v. Lettice* (2013) 221 Cal.App.4th 139, 147; *People v. Orabuena* (2004) 116 Cal.App.4th 84, 99.)

## II. *Section 654.2 Informal Supervision*

Section 654.2, under which the court placed Dillon on informal supervision, provides in part: "If a petition has been filed by the prosecuting attorney to declare a minor a ward of the court under Section 602, the court may, without adjudging the minor a ward of the court and with the consent of the minor and the minor's parents or guardian, continue any hearing on a petition for six months and order the minor to participate in a program of supervision as set forth in Section 654.[5] . . . If the minor successfully completes the program of supervision, the court shall order the petition be dismissed. If the minor has not successfully completed the program of supervision, proceedings on the petition shall proceed no later than 12 months from the date the petition was filed." (§ 654.2, subd. (a).)

Section 654.2 was enacted to permit the juvenile court to order a section 654 informal supervision program for a minor after a 602 petition has been filed. (*In re Adam*

---

5      Section 654 provides in part: "In any case in which a probation officer, after investigation of an application for a petition or any other investigation he or she is authorized to make concludes that a minor is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the probation officer may, in lieu of filing a petition to declare a minor a dependent child of the court or a minor or a ward of the court under Section 601 or requesting that a petition be filed by the prosecuting attorney to declare a minor a ward of the court under subdivision (e) of Section 601.3 or Section 602 and with consent of the minor and the minor's parent or guardian, delineate specific programs of supervision for the minor, for not to exceed six months, and attempt thereby to adjust the situation which brings the minor within the jurisdiction of the court or creates the probability that the minor will soon be within that jurisdiction. . . . [¶] . . . [¶] The program of supervision shall require the parents or guardians of the minor to participate with the minor in counseling or education programs, including, but not limited to, parent education and parenting programs operated by community colleges, school districts, or other appropriate agencies designated by the court if the program of supervision is pursuant to the procedure prescribed in Section 654.2."

11

*R.* (1997) 57 Cal.App.4th 348, 351-352.) "[T]he purpose of the section 654 informal supervision program is to avoid a true finding on criminal culpability which would result in a criminal record for the minor. If the informal supervision program is satisfactorily completed by the minor, the petition must be dismissed." (*Id*. at p. 352; see *Derick B. v. Superior Court* (2009) 180 Cal.App.4th 295, 300-301.) Indeed, "[i]f the minor does not satisfactorily complete the program, there is no statutory provision for dismissal of the petition; rather, the proceedings on the petition continue." (*In re Adam R.*, at p. 352.)

Under the express terms of section 654.2, any program of informal supervision (also referred to as "informal probation") requires the consent of both the minor and the minor's parent or guardian. (*In re C.Z.* (2013) 221 Cal.App.4th 1497, 1503, 1505; see *Charles S.*, *supra*, 32 Cal.3d at p. 748 [program of informal probation contemplated by section 654 "requires the full cooperation and support of the minor's family" and "can be instituted only with the consent of the minor and the minor's parent or guardian"; if there are differences, consent may be withheld].) "[I]n operation, informal supervision is almost indistinguishable from formal probation without wardship. The main differences are in terms of consent, duration, and whether the juvenile court makes a prior jurisdictional finding." (*In re C.Z.*, at p. 1505.)

When ordering a minor to participate in a section 654.2 informal supervision program, the court must impose "constructive assignments" that may include the payment

of restitution. (§ 654.6.[6]) A restitution requirement may serve a rehabilitative function consistent with the purposes of juvenile court law, while at the same time accomplishing other goals. (*Charles S.*, *supra*, 32 Cal.3d at pp. 747-748.) "[A]lthough restitution serves the obvious function of compensating the victims of crime, it also impresses upon the offender the gravity of the harm he has inflicted upon another, and provides an opportunity to make amends. . . . As it is directly related to the crime, restitution can, if proper in the circumstances, lead the minor to realize the seriousness of his crime, and to accept responsibility for it." (*Id.* at p. 748.)

While restitution is authorized as a condition to informal supervision (§ 654.6), a juvenile court may not deny a minor section 654 informal supervision based solely on his or her inability to pay restitution. (*Charles S.*, *supra*, 32 Cal.3d at pp. 744, 751.) In *Charles S.*, the juvenile court declined to grant section 654 informal probation to a minor who otherwise was a suitable candidate for it, because he was unable to pay a reduced amount of restitution fixed by the restitution officer, who had conceded the reduced sum was still beyond the family's ability to pay. (*Id.* at pp. 750-751.) On the minor's claims of error and violation of his equal protection rights, the California Supreme Court held

---

[6]      Section 654.6, added in 1990, provides: "A program of supervision pursuant to Section 654 or 654.2 for any minor described in Section 602 shall include constructive assignments that will help the minor learn to be responsible for his or her actions. The assignments may include, but not be limited to, requiring the minor to perform at least 10 hours of community service, requiring the minor to repair damaged property or to make other appropriate restitution, or requiring the minor to participate in an educational or counseling program. The minor or his or her parent or guardian may be required to reimburse the agency for all or part of the cost of the program of supervision if he or she has the financial ability to pay." (See *Derick B. v. Superior Court*, *supra*, 180 Cal.App.4th at p. 302.)

13

denial of informal probation under the circumstances was an abuse of discretion: "While restitution may be a useful condition of probation in many cases, it cannot be demanded when the minor and his family are unable to pay. No rehabilitative purpose can be served by requiring the minor to do something he is incapable of doing. Therefore, a minor cannot be denied probation under section 654 solely because of his inability to pay restitution to his victim. Although he may have no vested right to receive informal probation, he cannot be denied such treatment because of his poverty. Similarly, a minor cannot be denied formal probation under section 725 because of an inability to pay restitution." (*Id*. at pp. 750-751.)

*Charles S.* concluded that the rule it had announced "does not prevent a court or a probation officer from requiring an offender to make all efforts within his ability to provide reparation to his victim. The minor may be required, for instance, to pay that portion of restitution of which he is able. Furthermore, he may be required to make a good-faith search for employment in order to make reparation. [Citation.] And the state's interest in rehabilitation and reformation can be served by means less intrusive than denial of probation of indigents." (*Charles S.*, *supra*, 32 Cal.3d at p. 751.)

III. Charles S. *Required the Juvenile Court to Consider the Proffered Evidence of*

*Dillon's Financial Inability to Pay Restitution*

Relying on *Charles S.*, *supra*, 32 Cal.3d 741 and pointing out that restitution as a condition of section 654 informal supervision is permissive, not mandatory, Dillon contends the juvenile court abused its discretion by finding he did not successfully complete his informal supervision and refusing to dismiss his 602 petition based on his

14

inability to pay the restitution order. He argues, "In the same way that inability to pay restitution cannot preclude a minor from qualifying for 654 informal supervision, it follows then that a court cannot deny a minor successful completion of his informal supervision based solely on his inability to pay that same restitution. . . . [N]o rehabilitative purpose can be served by requiring Dillon to do something that he simply cannot do." Dillon argues he was not required to pay restitution when the evidence shows he was unable to pay it.

We agree with Dillon that under *Charles S*., *supra*, 32 Cal.3d 741, when a minor who is granted informal supervision offers evidence of his or her financial inability to pay, as is the minor's burden, the trial court must consider such evidence, and it cannot deny the minor an opportunity to avoid a true finding of criminal culpability—a finding of successful completion—if that evidence shows the minor and his parents have no ability to pay the restitution condition. As *Charles S*. pointed out, a juvenile court has discretion or authority to require an offender to make "all efforts *within his ability* to provide reparation to his victim" including "pay[ing] that portion of restitution *of which he is able*." (*Id*., at p. 751, italics added.) A minor suffers the same harm whether denied the ability to participate in informal supervision at the outset (*Charles S*.), or is denied the opportunity for successful completion at the end of the period: proceedings go forward on his or her 602 petition. If the law prohibits conditioning participation on a minor's ability to pay, it logically prohibits denying successful completion on that same basis.

15

Here, Judge Willis's comments in granting Dillon informal supervision, its remarks at the July 2, 2013 hearing, and its order that Dillon pay the entire restitution amount in monthly installments, suggest the court believed it mandatory that Dillon complete each and every condition of his program of informal supervision—including full payment of restitution—for it to declare successful completion and dismiss the section 602 petition.[7]  And, based on that impression, when Dillon offered to present evidence of his finances via his testimony and that of his mother at the July 2, 2013 hearing, Judge Willis did not consider it.  However, under *Charles S.*, the juvenile court must consider Dillon's evidence of financial ability, including any efforts he made to find employment if any, and if it showed Dillon and his family had no financial ability to pay any money towards restitution, *Charles S.* required it to conclude that Dillon had "successfully complete[d] the program of supervision" under 654.2 despite having not made any payments toward that condition.  Conversely, if the evidence showed Dillon had not made efforts within his ability to pay, the juvenile court had discretion to conclude Dillon had not successfully completed the program.

---

[7]     In criticizing the lead opinion's characterization of Judge Willis's understanding as to Dillon's restitution obligations (dis. opn. of Benke, J.), the dissent downplays Judge Willis's remarks at the hearing in which he placed Dillon on informal supervision.  As stated above, Judge Willis advised Dillon he "*must* comply with *each and every one* of these [recommendations].  . . . You *must pay restitution in the amount of $527.26 to the victim*, the [MTS].  . . . You need to come in on [the next court date] *having completed all the terms and conditions*; otherwise, we'll be having discussions about going back to work on this petition."  (Italics added.)  This, combined with the fact Judge Willis did not thereafter reduce the total amount of restitution, but merely ordered Dillon to make reduced payments toward it, indicates Judge Willis's belief that Dillon had to pay the full $527.26 in restitution before he would dismiss the section 602 petition.

16

When a trial court fails to exercise its informed discretion, an option for appropriate relief is to remand so that the trial court may exercise its discretion. (*People v. Orabuena, supra*, 116 Cal.App.4th at pp. 99-100.) Here, remand is appropriate for the juvenile court to reconsider Dillon's motion to dismiss his section 602 petition so as to exercise the full extent of its discretion, taking evidence offered by Dillon as to his and his parent's financial ability so as to decide whether the circumstances show Dillon successfully completed his program of informal supervision.[8]

IV. *Section 742.16 Does Not Apply to Section 654 Informal Supervision*

Though we have already concluded that reversal and remand is appropriate, for the juvenile court's guidance it is appropriate to address Dillon's argument that it was required to determine his ability to pay restitution under section 742.16, because his section 602 petition alleged Dillon had engaged in conduct violating Penal Code section 594. Dillon urges this court to conclude, as the appellate court did in *G.C. v. Superior Court, supra*, 183 Cal.App.4th 371, that section 742.16 applies notwithstanding the fact he was not "found to be a person described in Section 602."

---

[8]     Dillon relies on *In re Timothy N., supra*, 216 Cal.App.4th 725 in which this court held that absent evidence of a willful failure to pay or insufficient bona fide efforts to obtain the resources to pay the full amount, a minor's payment of only $1,380 of a $21,000 court-ordered restitution probation condition required the court to conclude that he "successfully complete[d] probation" under his plea agreement as a matter of law. (*Id.* at p. 728.) The minor in *Timothy N.* admitted to a felony count of burglary, and the court adjudged him a ward of the court and placed him on probation, including the condition that he and his parent jointly and severally pay $21,113.53 in restitution. (*In re Timothy N.*, at p. 729.) Because *Timothy N.* involves probation and not informal supervision, it is inapposite.

Resolution of this issue requires statutory interpretation, a question of law that is reviewed de novo. (*K.I. v. Wagner* (2014) 225 Cal.App.4th 1412, 1419.) " '[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] "In determining intent, we look first to the language of the statute, giving effect to its 'plain meaning.' " [Citations.] Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Ibid.*, quoting *Burden v. Snowden* (1992) 2 Cal.4th 556, 562; see *Doe v. Brown* (2009) 177 Cal.App.4th 408, 417-418.) And, whether section 742.16 applies in the context of section 654 informal supervision is a question of law that is properly addressed for the first time on appeal. (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 775 [party may raise a purely legal issue for the first time on appeal].)

In *G.C. v. Superior Court*, *supra*, 183 Cal.App.4th 371, the Sixth District Court of Appeal, addressing the question as one of statutory interpretation (*id*. at p. 377), held that section 742.16 applied in the deferred entry of judgment context notwithstanding the fact that a minor in the deferred entry of judgment context is not "found to be a person described in Section 602" due to his or her commission of an act of graffiti or vandalism under Penal Code section 594. (*G.C. v. Superior Court*, at pp. 374, 377.) There, the juvenile court had granted deferred entry of judgment to a minor who admitted a single felony count of vandalism by graffiti, and ordered him to pay $516 in restitution. (*Id*. at p. 374.) Later, the minor, who had not completed his restitution condition, moved under

18

section 742.16 to reduce the amount or order community service in lieu of restitution because he did not have the ability to pay. (*G.C. v. Superior Court*, at p. 375.) The juvenile court declined to apply section 742.16 because as a result of the deferred entry of judgment proceedings, it had not taken jurisdiction over the minor as required by the " 'found to be a person' " language of section 742.16. (*G.C. v. Superior Court*, at pp. 375-376.)

On the minor's petition for writ of mandate, the attorney general conceded that section 794, the deferred entry of judgment statute, incorporated the provisions of section 730.6 pertaining to victim restitution, but argued section 742.16 by its terms did not apply because the minor had not been adjudicated a ward. (*G.C. v. Superior Court*, *supra*, 183 Cal.App.4th at pp. 375-377.) The appellate court concluded that section 794 "plainly incorporates into the deferred entry of judgment process the provisions of the Welfare and Institutions Code pertaining to victim restitution" including section 742.16, which includes the same " 'found to be a person' " language as section 730.6 (*G.C. v. Superior Court*, at p. 377.[9]) It reasoned the juvenile court could rely on section 742.16 in ordering restitution in the deferred entry context; that "any other construction of section 742.16 would lead to the absurd result that a section 602 ward in a graffiti case could be excused from his or her restitution obligation due to an inability to pay but a minor found suitable

---

[9]     Specifically, the court relied on the concluding sentence of section 794: " 'The minor may also be required to pay restitution to the victim or victims *pursuant to the provisions of this code*.' " (*G.C. v. Superior Court*, at p. 377, italics added; accord, *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 304, fn. 3.) Such language is not present in section 654.2 or 654.6.

for deferred entry of judgment could not." (*G.C.*, at pp. 377-378.) The court rejected the argument that the juvenile court could not reconsider the minor's ability to pay during the deferral period. (*Id*. at p. 378.) It therefore granted a peremptory writ of mandate requiring the juvenile court to hear and consider the minor's motion under section 742.16 to modify his victim restitution order. (*Id*. at p. 379.)

As indicated, the court in *G.C. v. Superior Court* based its reasoning on the fact that by its terms, the statute governing that deferred entry of judgment, section 794, expressly incorporated the restitution provision of section 730.6, a matter conceded by the People in that case. But in *In re K.C.*, *supra*, 220 Cal.App.4th 465, the Third District Court of Appeal reached a contrary conclusion on that point: that by its plain terms, section 730.6 "applies only to adjudicated minors," i.e., those found to be a person described in Section 602. (*In re K.C.*, at pp. 470, 471.) The *K.C.* court held a juvenile court who had placed a minor on section 654.2 informal supervision with a victim restitution condition could not convert the restitution order into a civil judgment under section 730.6, because "a true finding under section 602 is inherently inconsistent with a program of informal supervision under section 654.2." (*In re K.C.*, at p. 471.[10])

---

[10]   In *In re K.C.*, however, the minor had expressly agreed that the restitution order could be converted to a civil judgment as provided in section 730.6. (*In re K.C.*, *supra*, 220 Cal.App.4th at p. 470.) Thus, the appellate court held he was estopped from raising the issue, even though he had consented to an act in excess of the juvenile court's jurisdiction. (*Id.* at pp. 470, 472.)

The reasoning of *In re K.C.*, which is grounded on construction of plain, unambiguous, statutory language and the undisputed nature of section 654.2 informal supervision, extends to section 742.16. Section 742.16's "found to be a person" language renders it inherently inconsistent with a program of informal supervision under section 654.2, where the minor is not adjudicated a ward of the court. (§ 654.2, subd. (a).)

DISPOSITION

The judgment is reversed and the matter remanded for the juvenile court to reconsider Dillon's motion to dismiss his section 602 petition in accordance with the views expressed in this opinion.

O'ROURKE, J.

21

Aaron, J., concurring:

I concur in parts I, II and III of the opinion and in the result. However, I write separately to discuss in greater detail the nature of the trial court's errors, in an attempt to ensure that the errors are not repeated on remand.

It is clear from the trial court's comments that, from the outset, the court had an erroneous understanding of the applicable law. Specifically, several comments that the court made suggest that it was apparently initially under the misimpression that it was required to order restitution as a condition of informal supervision. Further, it is clear that throughout the entirety of the proceedings, the court labored under the misimpression that once restitution is imposed as a condition of informal supervision, the minor *must* pay that restitution or face reinstatement of criminal proceedings, regardless of the minor's financial circumstances, and also incorrectly believed that an inability to pay restitution constituted a basis to deny a minor the benefit of informal supervision in the first instance.

At the hearing at which the court imposed informal supervision with conditions, the court required that Dillon pay restitution in the amount of $567.26 to the San Diego Metropolitan Transit System, without inquiring as to Dillon's ability to pay restitution. At the February 11, 2013 review hearing, the court remarked, "[T]he law requires that [Dillon] pay off restitution fully before the court can grant the [Welfare and Institutions

Code section][1] 654 [informal supervision]."  Later, at the July 2 review hearing, in discussing Dillon's failure to pay the restitution, the court stated, "[T]he victim has the right to have that condition satisfied," and asserted that restitution was "a mandatory requirement."  The court added, "The only real solution across the board is to vacate the order for informal supervision and start proceedings on the case and then I would be willing . . . to accept an admission on one of the counts . . . ."  Expressing its frustration that Dillon's inability to pay had not been raised at the outset (although the court made no inquiry at the time it imposed the restitution condition despite the language in section 654 that restitution be "appropriate"), the court stated, "*But if I know up front there's no possible way you can make that payment, then I'm probably not going to grant a [section] 654 [informal supervision] because again, the victim has a right to be compensated and made whole for their loss.  If you're telling me right up front I can't meet a very basic condition, we're not going to enter into that agreement.*"[2]  (Italics added.)

---

1     All undesignated statutory references are to the Welfare and Institutions Code.

2     Interestingly, under section 742.16, subdivision (b), when a minor is found to be a person described in section 602 by reason of having committed the offense with which Dillon was charged, i.e., a violation of Penal Code section 594, the court is to order the minor to pay the costs of removal of the graffiti or repair of the defaced property "*to the extent the court determines that the minor or the minor's estate have the ability to do so.*" (§ 742.16, subd. (b), italics added.)  Even assuming that section 742.16 did not initially apply in this case because Dillon was placed on informal supervision and there was no finding that he was a person described in section 602, in light the legislative intent expressed in section 742.16, it would be logical to conclude that the court was required to

At the July 2, 2013 review hearing at which the court considered Dillon's motion to dismiss the petition, Dillon's counsel informed the court that Dillon had complied with all of the conditions that the court had imposed, with the exception of the restitution condition. Counsel explained that Dillon and his parents were homeless and that they were required to turn over to the homeless shelter where they were living "all the money the family earns." Counsel stated, "The question is is there a spare dollar in their pocket and the answer [is] probably no." Dillon informed the court that the family had to sell their food stamps in order to pay rent to the shelter, stating, "They [the shelter] demand a certain requirement of money. If we don't pay in that week, then we're kicked out. So all of our money goes to that. And we don't have enough money to pay for it, so we sell our food stamps in order to keep up with the rent." Dillon's counsel argued that Dillon was entitled to dismissal of the petition despite his failure to pay restitution because, under *Charles S. v. Superior Court* (1982) 32 Cal.3d 741 (*Charles S.*), the court could not deny dismissal based on Dillon's inability to pay.

The court's comments throughout the proceedings in this case, and in particular, at the July 2 hearing, demonstrate that the court apparently mistakenly believed 1) that it was required to impose a restitution obligation as a condition of informal supervision; 2) that if Dillon and his family were unable to pay restitution, the court was required to reinstate delinquency proceeding and go forward on the petition, thereby denying Dillon

consider Dillon's ability to pay restitution in determining whether a restitutionary condition was "appropriate" under section 654.

3

the opportunity to participate in the informal supervision program, and essentially ensuring that Dillon would incur a criminal record; and, most significantly, 3) that the inability to pay restitution constituted a basis for denying a minor the benefits of section 654 informal supervision in the first place.

This last point is a critical one. The court's last comment makes it clear that *even if Dillon had informed the court at the outset that he was unable to pay restitution, the court would have denied Dillon the benefits of section 654 informal supervision,* in direct contravention of the holding of *Charles S.*

Further, in fact, Dillon did *not* wait until the hearing on his motion to dismiss the petition to inform the court of his family's dire financial situation. At the February 2013 informal supervision review hearing, Dillon's counsel informed the court that "finances are very tight for the family right now," and in response, the court granted Dillon a fee waiver for a graffiti class and deleted the requirement that he complete a work project. At the next review hearing on June 20, 2013, in discussing the fact that Dillon had not yet paid any restitution, his counsel informed the court that Dillon had no money, adding, "And if you don't have any money, you can't pay." Dillon's counsel further informed the court that the family was homeless and living in a shelter.

At the July 2 review hearing, in denying Dillon's motion to dismiss, the court faulted Dillon for failing to make any effort to pay restitution, remarking "I have never heard of an instance where there isn't a dollar in somebody's pocket. If this is one of these instances, this would be the first, *but even so being the first, it is still a financial*

4

*obligation that must be met in some way, shape or form* and he is not being treated differently. I would be treating him differently than everybody else if I were to say I'm going to vacate the order for restitution. Then he would be getting a benefit that nobody has ever gotten and nobody would likely get in the future because we would arbitrarily void the concept of payment of restitution." (Italics added.) The court found that Dillon had not made sufficient efforts to pay restitution, stating, "There was never an attempt and that's where we're having this big difference. There was never the attempt to pay, it was just completely disregarded."

However, there was *no evidence* of what efforts Dillon may have made toward paying restitution, and the court *declined* Dillon's counsel's offer to present the testimony of Dillon's family members regarding their financial circumstances. There was thus no evidentiary basis for the court's "finding" that Dillon had not made a sufficient effort to pay restitution. In fact, the only information in the record on this point is that Dillon had tried, without success, to find employment. Specifically, at the July 2 hearing, Dillon's counsel informed the court that Dillon had "been unable to find work in San Diego."

At oral argument, the People endorsed the view that the trial court could have based its finding of insufficient efforts to pay restitution on the fact that no payments were made. Clearly a finding of insufficient efforts cannot be based on the fact that no payments were made. That fact, alone, provides no information concerning what efforts an individual may have made. The obvious alternative explanation for the fact that no payments were made—which has support in the record—is that Dillon and his family

5

simply had no money at all to pay restitution, and that, as their counsel proffered, every dollar that they earned went to their homeless shelter.

While, as noted in the lead opinion, a minor may be required to pay "that portion of restitution of which he is able," that is not what the court ordered in this case. Rather, the court ordered that Dillon pay the entire amount of restitution, with no consideration of his ability to pay. Further, there is simply no evidence that at any point in time, from the outset of this case through the ultimate hearing, Dillon *had the ability* to pay any restitution. In fact, the only indications in the record are to the contrary.

If the court had determined, at the outset, prior to ordering restitution as a condition of informal supervision, whether Dillon and his family had the financial ability to pay restitution, *and* had not been under the misimpression that restitution was mandatory, the court might never have ordered restitution in the first place. If the court had understood that it was not required to order restitution and had determined that Dillon and his family were destitute but that Dillon was otherwise a good candidate for informal supervision, under *Charles S.*, the court could not have denied informal supervision to Dillon based on his inability to pay restitution. Thus, the court may very well have placed Dillon on informal supervision without ordering restitution. If the court had placed Dillon on informal supervision and ordered restitution with an understanding of the family's financial circumstances, and Dillon agreed to the condition, intending to make his best efforts to get a job and pay, but was ultimately not able to find a job, the court could have deleted the restitution condition and still dismissed the petition on the

6

basis that Dillon had complied with all of the other conditions. However, because the court was apparently unaware of the applicable law, as demonstrated in the lead opinion, it is clear that the court did not understand the scope of its discretion. We are remanding the case to give the court the opportunity to exercise its *informed* discretion.

On remand, I believe that it would be appropriate for the trial court to determine whether a restitution order was "appropriate" under the circumstances of this case (section 654) in the first place. If the court determines, based on evidence of Dillon's and his family's circumstances, that requiring Dillon to pay restitution was not appropriate, the court may delete that condition and still dismiss the petition. If the court determines that the restitution order *was* appropriate, then the court must determine, *based on evidence*, whether Dillon's efforts to find employment or another way to pay were or were not satisfactory.

Finally, I would observe that, ironically, if the court finds that Dillon did not make sufficient efforts to pay the restitution and Dillon's adjudication stands, then under section 742.16 subdivision (b), the court *must* determine whether the minor or his estate has the ability to pay the $567.26 in restitution that the court ordered.

AARON, J.

7

BENKE, Acting P.J., Dissenting.

In describing the record before us, the lead and concurring opinions are incomplete in material respects. These oversights have in turn led my colleagues to remand this matter for further entirely unnecessary and duplicative proceedings.

On a very practical level, my colleagues have entirely ignored what is something fairly unusual: a juvenile offender, who, when confronted with a judicial officer unwilling to lower his expectations of the juvenile's capabilities, met those expectations and in a very real way made himself accountable for an offense he committed. By suggesting that the trial court might on remand erase that rare moment of accountability, my colleagues have done this juvenile no favors.

1. Material Facts

A. *Underlying Conduct*

The lead and concurring opinions fail to fully set forth the conduct that brought the ward, Dillon S., before the juvenile court. According to the police report, on July 7, 2011, Dillon was observed by a Metropolitan Transit Service (MTS) security officer boarding a trolley with a black sharpie marker in his hand; Dillon looked around nervously and then wrote "DAZ DEE1" on the seat across from him. Dillon then moved across the aisle and wrote "DAZ DEE1" on another seat before capping his sharpie and putting it in his pocket. When confronted by the security officer, Dillon attempted to flee and force was required to detain him. After Dillon was escorted off the trolley, he was interviewed and disclosed he had vandalized a staircase railing, walls, trains, signs and other areas that belonged to MTS, including two benches and a railing that had been vandalized earlier on the day he was detained.

I think it is important to recognize that Dillon's conduct went beyond simply marking a couple of seats on a trolley and that, at the time of his apprehension by trolley security officers, he was on something of a tagging spree. These circumstances speak not only to the amount of damage Dillon caused but more importantly to the need for some meaningful level of intervention in Dillon's life.

B. *Compliance with Conditions*

Apart from the requirement that he pay restitution, Dillon's August 16, 2012 deferred prosecution agreement under Welfare and Institutions Code[1] sections 654 and 654.2 required that he report to the probation department for a contract compliance meeting on January 14, 2013; obey all laws; complete 40 hours of community service; complete two days of work projects; complete a graffiti education program; pay $567.26 in victim restitution; maintain satisfactory school grades, attendance, and citizenship or full-time employment or a full-time combination of both; abide by a 6:00 a.m. to 6:00 p.m. curfew; and write and submit a two-page essay on what he learned from his experience.

At a review hearing on February 11, 2013, Dillon had completed some but not all of the required conditions of his agreement. Dillon had completed the two-page essay and 40 hours of community service. His mother reported he had complied with his 6:00 p.m. curfew, maintained appropriate behavior at home and had not incurred any violations of law. Because he could not afford either program, Dillon had not completed the graffiti education program or the two days of work projects.

---

[1] All further statutory reference are to the Welfare and Institutions Code.

Dillon was not employed at the time of the February review hearing, although his mother had a job at a sandwich shop and was hoping to get him a job there as well. Although Dillon did not provide his latest school report, he conceded to the probation officer that his grades were "not that good." At that point, Dillon was almost 18 years old and in the final semester of the 12th grade. Dillon's counsel also conceded that Dillon had not made any restitution payments and asked that the review hearing be continued so that he could make some restitution payments.

The Honorable Carlos Armour was presiding at the February 11, 2013 review hearing. At the hearing, Judge Armour authorized funds to pay for Dillon's graffiti class and eliminated the two-day work project as a condition of probation. Judge Armour thought it was more important that Dillon get a job. Judge Armour made the inaccurate statement, which my colleagues rely on to a great extent, that: "He has to pay the restitution off in full before I can dismiss the petition . . . or before Judge Willis can dismiss the petition. He has until July."

The next review hearing, on June 20, 2013, was conducted by the Honorable David Oberholtzer. By that time, Dillon had turned 18. Although not entirely, in significant respects the issues we confront on appeal were examined and decided at the June 20, 2013 review hearing. At the June 20 hearing, Dillon reported that, although his grades had improved since the time of the February review hearing, he did not have enough credits to graduate from high school and planned to attend a continuation school. Dillon also conceded that he had not made any restitution payments. Given these concessions, Judge Oberholtzer was unwilling to accept Dillon's counsel's argument that Dillon had complied with his section 654 agreement: "Well, if there's compliance, it's

3

barely complying. According to the report, in February the grades were bad, not because of lack of ability, but because of lack of effort. He didn't bother to turn in his homework, no effort at all to pay the restitution, none. And, apparently, no intent to pay the restitution."

Because the one-year period in which Dillon was permitted to fulfill his obligations under section 654 was due to expire on July 3, 2013, and Judge Oberholtzer was not satisfied with Dillon's performance on probation, Judge Oberholtzer initially agreed to a proposal made by the prosecutor: that the court enter a judgment for the total amount of the restitution, thereafter determine Dillon had complied with his section 654 agreement and dismiss the petition. However, after further consultation with the probation officer, the prosecutor determined that such a disposition might not be lawful; the prosecutor was concerned that any restitution judgment, entered before there was a wardship determination, would be invalid. In light of the prosecutor's concerns, the review hearing was continued to July 2, 2013, the day before the compliance period under section 654 was set to expire. Before the continued hearing took place, Dillon made a formal motion to dismiss the petition.

I set forth the foregoing because I think that it is important to dispel any suggestion that, aside from his failure to make any restitution payments, Dillon completely satisfied all of the other terms of his section 654 agreement. Rather, the record shows that, although the juvenile court exercised a great deal of flexibility in relieving Dillon of obligations he was not able to meet and gave him more time to fulfill his remaining obligations, as of the June 20, 2013 hearing Dillon did not have a job and more importantly was not satisfactorily progressing in school. These shortcomings were

4

no doubt of concern to the juvenile court in assessing his overall compliance and his failure to make *any* restitution payments.

2. Order Denying Motion to Dismiss

The July 2, 2013 hearing was conducted by the Honorable Browder A. Willis. A full reading of the record at that hearing makes it clear that Dillon's failure to make *any* restitution payments was of paramount concern to Judge Willis. At the very start of the hearing, Judge Willis stated: "I've received and read the motion to dismiss pursuant to 654.2 and I've received and just reviewed the people's opposition. The whole argument is centered around the issue of restitution. So, I've read and considered the moving papers, the case law, the general concept. My tentative is to deny your request for dismissal based on the ground that it was an agreement.

"*It was an agreement to at least make an effort to pay.* In addition, under Marcy's Law, the victim has the right to have that condition satisfied. The issue of restitution needs to be addressed in some fashion and dismissal basically voids any issue of restitution. I don't think that's equitable or reasonable."

In response to Dillon's counsel's argument that Dillon and his family could not afford to pay restitution, Judge Willis stated: "*Looking at the larger picture of rehabilitative goals and the issue of restitution, the court has never locked people into a box based on that. There's a lot of leeway. One of the concepts of good faith effort is open up the account and pay two dollars a month, pay five dollars a month. There is no minimum required from revenue and recovery. All they require is a good faith effort. If he had paid consistently one dollar a month, but to completely ignore the obligation?*" (Italics added.) Judge Willis then went on to explain how very little he would require in

5

the way of payments in order to find a good faith effort:  "The majority of the people that stand before me in this court are destitute.  They are underpaid, they are underfunded, they don't have the ability to pay what one would consider a reasonable amount.  *But everybody has some ability . . . that's what I found.  Some ability to pay something.  I have never heard of an instance where there isn't a dollar in somebody's pocket.*  If this is one of these instances, this would be the first, but even so being the first, it is still a financial obligation that must be met *in some way, shape or form* and he is not being treated differently."  (Italics added.)

After expressing his concern with Dillon's failure to make any effort to pay restitution, Judge Willis stated that he was unwilling to grant Dillon's motion to dismiss: "There was never an attempt and that's where we're having a big difference.  There was never the attempt to pay, it was just completely disregarded.  There wasn't any effort to [come] in to court and say this is what's happened.  *This is why I can't do this*."

After the court made it clear it would not grant Dillon's motion to dismiss the petition, but was willing to work with Dillon in establishing a minimal payment schedule, Dillon agreed to enter a plea.  The full colloquy between the trial court and Dillon bears repetition here:  "The Court:  Can you afford five dollars a month?

"The Minor:  I have no problem paying for it."

"The Court:  I have no doubt in my mind you're going to be working and you're going to meet your debts and obligations and responsibilities associated with being on probation.  But I also understand whatever you're doing, you're going to be helping assist your family to the best of your ability.  If five dollars is manageable, I know revenue and recovery goes down that far."

6

In stepping up and agreeing to pay the $5 a month suggested by the trial court, Dillon had come some considerable distance from the 2011 tagging spree and his lack of academic success and his complete failure to make any payments on the agreed restitution. For me, that moment of accountability, by a young homeless man with incredible challenges before him, is something of substantial rehabilitative value. I do not think we should not take that moment away from Dillon in the absence of some good cause.

3. Lead Opinion

The lead opinion states that Judge Willis "believed it mandatory that Dillon complete each and every condition of his program of informal supervision—including full payment of restitution—for it to declare completion and dismiss the section 602 petition." (Lead opn. *ante*, at p. 16, fn. omitted.) Such a belief, the lead opinion reasons, requires that this case be remanded so that the juvenile court can exercise its "informed discretion." (*Id*. at p. 17.)

Nothing in the record with respect to the hearing on the motion to dismiss, heard by Judge Willis, is even vaguely similar to what the lead opinion attributes to him. Nothing Judge Willis stated at the dismissal hearing can be fairly interpreted as suggesting that he believed Dillon was required to pay the full amount of his restitution in order to successfully complete his program. Rather, as I have set forth above, quite to the contrary, in denying the motion to dismiss, Judge Willis repeatedly emphasized that he was troubled by the undisputed fact that Dillon had failed to pay *any* amount of restitution. The record of the hearing on the motion to dismiss is clear it was the utter failure to make *any* payments that was of paramount concern to Judge Willis.

7

The statements the lead and concurring opinions rely upon to support their conclusion that Judge Willis did not understand he had discretion to consider whether Dillon had made sufficient effort to pay restitution are taken entirely out of context and simply do not support the result my colleagues have reached. At the time Dillon agreed to the section 654 conditions, Judge Willis emphasized to him that *all* conditions of the agreement must be completed. This is probably a very good thing for a juvenile to hear at the outset of a program; the alternative, a statement to the effect that the conditions the juvenile just agreed to are negotiable, is not a message that would encourage a juvenile's best efforts. In fact, of course, as I noted, during the course of the program the juvenile court did delete and alter the conditions of the program when they presented obstacles Dillon could not overcome. Contrary to the lead and concurring opinions' conclusions, there is nothing in the record that supports the conclusion that Judge Willis insisted that the entire amount of restitution had to be paid. As Judge Willis explained: "[I]f we had entered into an agreement and he had been paying at 5, 10, 15 dollars a month for the whole time and evidenced that good faith, I would have taken that into consideration as well."

The lead opinion is also concerned with Judge Willis's unwillingness to take evidence as to Dillon's financial circumstances. Again, the record could not be more clear that Judge Willis understood that Dillon and his family were in the most difficult of financial circumstances; he then expressed his conclusion that they nonetheless could have made some effort—as little as a dollar a month. Given Judge Willis's statements, which assumed the family's dire circumstances, I fail to comprehend what is to be gained by conducting a hearing in which the family will only prove that his assumptions were

8

correct.

To summarize then, at the hearing on the motion to dismiss Judge Willis made it unmistakably clear that it is Dillon's admitted failure to make *any* restitution payment, even so little as a dollar a month, that prevented the court from granting the motion to dismiss and, more than a year later, my colleagues deliver an opinion to him which states that, no, despite what you said at the hearing, Judge Willis, you in fact required full payment and you must reconsider your decision and consider if less than full payment would be satisfactory. Even though, Judge Willis, you said a dollar a month for a year would have been enough to show good faith. I think Judge Willis is going to find this directive somewhat perplexing.

4. Concurring Opinion

The concurring opinion states: "Clearly a finding of insufficient efforts cannot be based on the fact that no payments were made." (Conc. opn. *ante*, at p. 5.) I disagree.

CONCLUSION

I would affirm the order denying the motion to dismiss. The record could not be more plain Judge Willis fully understood that payment in full was not required in order to satisfy the requirements of Dillon's program of supervision. In light of Dillon's failure to make *any* restitution payment, and his less than satisfactory performance of the other conditions of his agreement, the judge did not abuse his discretion in denying the motion to dismiss.

BENKE, Acting P. J.

9